(31 App. Div. 16.)

## McMAHON v. BENNETT.

(Supreme Court, Appellate Division, First Department. June 10, 1898.)

LIBEL—DEFENSES—PUNITIVE DAMAGES.

The fact that the proprietor of a newspaper has posted a notice forbidding the publication of injurious statements until known to be true, and that he is abroad at the time of the publication of a given libel, does not entitle him to immunity from punitive damages.

Appeal from trial term.

Action by Martin J. McMahon against James Gordon Bennett. From a judgment on the verdict of a jury and from an order denying a new trial, defendant appeals. Affirmed.

Argued before BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Joseph H. Choate, for appellant.
John C. Robinson, for respondent.

McLAUGHLIN, J. This action was brought to recover damages alleged to have been sustained by the publication of an article in a newspaper published by the defendant in the city of New York. The head lines of the article published were as follows: "Conspired to Murder Six. Sons of Timothy McMahon Play Cards to Determine Which shall Murder the Family. Chance Fixed on Patrick. He Began by Killing His Aunt and Nearly Killing His Uncle. Tragic End of a Family Feud. The Intended Victims Stood in the Way of a Big Inheritance." The article then purported to give a statement of the facts of the conspiracy, and the manner adopted by which it should be determined which one of the brothers should commit the murders. The following quotation from the article shows, in a general way, its character:

"You are to picture these four unworthy sons seated about a table, a pack of greasy cards in their hands. One and all they are incensed against their father, who they consider has cut them off against their uncle and aunt, whom they regard as interlopers, and against their sister and her children, who will be the beneficiaries if they are deprived of their patrimony. Six lives stand between the gamblers and the inheritance they covet. Six lives are the stake. The cards are shuffled and dealt, and the game is played. The loser is to arm himself and kill—kill—kill. The aged father is to be one

victim; the sister and her helpless children; then the old man and woman, the uncle and aunt,—all are to be killed. The choice of luck, or skill, is Patrick, the renegade, the suspected lunatic, the mauvais sujet of the family."

The plaintiff had a verdict of $4,000, and from the judgment entered thereon the defendant has appealed. He asks that the judgment be reversed, principally upon the ground that the jury were permitted to award punitive damages. Upon the trial it appeared in evidence that at the time of the publication the defendant was in Europe, and that he had no personal knowledge of the publication; that he had prepared and posted in the office of the newspaper a rule which provided, in substance, that no article reflecting upon any person or corporation should be published until it had been investigated and found to be true. But this did not relieve him, as contended by his counsel, from punitive damages, provided the jury found that the article referred to was carelessly and recklessly prepared and published. The proprietor of a newspaper is responsible for whatever appears in the columns of his paper, and it is of no importance, so far as an action to recover damages is concerned, that the same was published without his knowledge. He must see to it, if he desires to escape liability, that articles are not published which unjustifiably injure the reputation or business of innocent people. This rule is so well settled that an extended discussion is neither necessary nor the citation of many authorities called for. In Rex v. Gutch, 1 Moody & M. 433, 22 E. C. L. 559, Lord Tenterdon held that:

"A person who derives profit from, or who furnishes the means for carrying on, the concern, and intrusts the publication to one whom he selects, and in whom he confides, ought to be answerable, even criminally, although it cannot be shown that he was individually concerned in the particular publication. * * * If a publisher could avoid responsibility by telling their foreman not to admit anything personal, and then absent themselves while a libel was inserted, they could very easily make the newspapers vehicles for the circulation of the most atrocious slanders with perfect impunity."

And the same rule was substantially adopted in this state, as early as 1810, in Andres v. Wells, 7 Johns, 261, where Spencer, J., said:

"Where a man is the owner of a paper, and gives over the conducting of it to another, he thereby constitutes him his general agent, and is answerable for all his acts done in the execution of that trust, whether within or beyond the intention of the principal."

And it has been followed ever since. Thus, in the recent case of Holmes v. Jones, 147 N. Y. 59, 41 N. E. 409, Andrews, C. J., in delivering the opinion of the court of appeals, restates the rule as follows:

"The publication of a libel is a wrongful act, presumably injurious to those persons to whom it relates, and, in the absence of legal excuse, gives a right to recovery irrespective of the intent of the defendant who published it; and this, although he had reason to believe the statement to be true, and was actuated by an honest, or even commendable, motive in making the publication. But the amount of damages in an action for libel is peculiarly within the province of the jury. The jury may give nominal damages, or damages to a greater or less amount, as they shall determine. The jury may accord damages which are merely compensatory, or damages beyond mere compensation, called 'punitive' or 'vindictive' damages, by way of example or punishment, when, in their judgment, the defendant was incited by actual malice, or acted wantonly or recklessly, in making the defamatory charge."

Applying this principle to the facts in this case, it is difficult to see how the jury could have reached any other conclusion than it did. The article in question was prepared by a reporter in the employ of the defendant, and was, so far as the plaintiff was concerned, purely a creation of the reporter's imagination. The reporter was sworn for the defendant upon the trial, and taking his own testimony, and according to it the most favorable consideration possible, it demonstrates clearly and conclusively that the article was not only prepared and published in the most careless and reckless manner, but without the slightest regard for, or consideration of, the rights of the plaintiff. Under such circumstances, the jury had a right to award to the plaintiff punitive damages.

After a careful consideration of the whole evidence, including the charge of the trial court, we are satisfied that no error was committed which calls for a reversal of the judgment. It is unnecessary to consider whether error was committed upon the trial by permitting the plaintiff to testify as to the amount of salary received by him at the time of the publication, for the reason that the trial court, at the request of the defendant, instructed the jury that "the plaintiff could not recover anything for loss of salary, having suffered none before suit brought."

The judgment must be affirmed, with costs. All concur.